BRUCE CAHN *v.* FLORENCE CAHN
(10234)

DUPONT, C. J., DALY and O'CONNELL, Js.

Argued December 12, 1991—decision released February 25, 1992

*C. Ian McLachlan,* with whom were *Laura Welch Ray,* and, on the brief, *William H. Narwold,* for the appellant (defendant).

*Sheldon A. Rosenbaum,* for the appellee (plaintiff).

DALY, J. The defendant appeals from the trial court's judgment dissolving her marriage to the plaintiff. The defendant claims that the court (1) improperly excluded the deposition testimony of three witnesses, (2) failed to give full faith and credit to a New York judgment, (3) abused its discretion in making its financial awards to the defendant, and (4) was biased against the defendant thus depriving her of a fair trial. We affirm the judgment of the trial court.

The court found the following facts. The parties were married in New York on May 4, 1972. At the time of this trial, the parties had one minor child. The plaintiff instituted an action for divorce in New York in January, 1982. The plaintiff's complaint alleged cruel and inhuman treatment by the defendant but was dismissed by the trial court in New York. New York law did not provide for no fault divorces but it did authorize a court to award alimony, child custody, visitation and support when a divorce action is dismissed. The New York court ordered the plaintiff to pay $35,000 per year in maintenance and $5000 per year in child support. The defendant was awarded possession of the joint marital residence in New York and was required to maintain and repair the house. Both parties were ordered, however, to share the costs of any major structural repairs done on the New York residence. The court in the present action found that this house was worth $350,000 at the time of this trial.

In 1984, the plaintiff began dating another woman. In 1985, they purchased a house in New York for $237,000. In 1989, that house was sold for $385,000.

A receiver appointed pursuant to New York law seized $105,107.46 to pay back support and attorney's fees which the plaintiff owed to the defendant. The remaining proceeds were held by the receiver and paid to the defendant as support. After those proceeds were exhausted, the plaintiff began paying support directly to the defendant. From June, 1989, to the date of this trial, the court found that the plaintiff had paid only $1250 toward the maintenance of the defendant. The plaintiff, however, had not missed any child support payments.

The plaintiff and his female friend moved to Connecticut in the spring of 1985. He instituted his first dissolution action, which was heard as an uncontested matter, on April 30, 1986. The defendant was not present. The trial court found that the defendant had called the courthouse on April 30, 1986, to state that she was unable to appear because of her physical condition. The defendant also made the court aware of the plaintiff's unsuccessful dissolution action in New York and that there were outstanding contempt orders against the plaintiff from the New York action. Once the trial court hearing the first dissolution action discovered this information, it stayed the judgment for two weeks to provide the defendant with an opportunity to be heard on this matter. The plaintiff and his attorney already had left and were not immediately aware of the stay order. On June 5, 1986, the plaintiff's attorney was notified about the stay order which had been issued on May 21, 1986. On May 16, 1986, the plaintiff, unaware of the stay order, had married in Hawaii. The plaintiff and his new wife returned to live in New York. Ultimately, the first Connecticut dissolution action was withdrawn on January 26, 1987.

In 1987, the plaintiff and his female friend returned to Connecticut. The marriage ceremony of May 16, 1986, was annulled without contest on May 3, 1989. The

judge who presided over the annulment was the same judge who presided over this dissolution action. The plaintiff instituted the present action in February, 1989. On May 10, 1990, the parties were notified that this action was scheduled for trial on July 5 and 6, 1990. Due to several delays which will be discussed later in this opinion, the trial did not conclude until November, 1990.

The court ruled that the marriage had irretrievably broken down due to the fault of the defendant. The defendant was awarded custody of the minor child. The plaintiff was ordered to pay child support in the amount of $150 per week until the child graduated from high school in June of 1991. The defendant was awarded periodic alimony in the amount of $10,000 annually until June 30 1991, and, thereafter, $15,000 annually until June 30, 1993. The plaintiff was ordered to maintain medical insurance coverage for the defendant until June 30, 1993. The plaintiff also was ordered to transfer his remaining interest in the marital residence in New York to the defendant in return for a payment of $25,000 by the defendant. The court did not award counsel fees to the defendant. The defendant brought a motion to open and vacate the judgment and also sought to have the court reconsider its orders. The court denied this motion. The defendant then appealed the judgment to this court.

I

The defendant first claims that the trial court's refusal to admit the depositions of her treating physician and two psychotherapists who were unable to appear in court was improper.

The following facts are pertinent to this claim. As mentioned previously, the parties were notified on May 10, 1990, that trial was scheduled for July 5 and 6, 1990. On July 5, counsel for the defendant appeared

without the defendant. The court assigned this case for a pretrial conference to determine if settlement was possible. The pretrial failed and the court instructed both sides to return the following day. The defendant did not appear on the morning of July 6, 1990, and the trial began without her. The defendant telephoned to state that she would be in court by the afternoon of July 6 and that she did not object to the trial continuing without her. The defendant arrived at approximately 3 p.m. that afternoon. The plaintiff was testifying when the defendant arrived in court. The court then allowed the defendant to take the stand out of order because the defendant claimed that she was having medical difficulties that could require surgery and prevent her from being present in court at a future date. The parties were not able to conclude the trial on July 6, 1990.

After conferring with the parties, the court decided to continue the case until July 24, 1990. The defendant told the court that she had scheduled a medical procedure for July 23, 1991. The court told her that she should reschedule the procedure because the trial "took precedence." On July 24, the defendant again did not appear. Counsel for the defendant stated that she underwent medical procedures and was advised by her physicians not to travel for seven to ten days. Counsel for the defendant sought a continuance, which was granted, to September, 16, 1990. The court ordered the defendant's counsel to bring a letter from the physician who performed the medical procedures for the defendant stating the reasons why the defendant could not be present in court on July 24 and whether these medical procedures were emergency procedures. On September 14, 1990, the defendant again did not appear in court. Counsel for the defendant presented a photocopy of a letter from the defendant's physician. According to the defendant's counsel, the physician met with the defendant on September 12, 1990, and faxed

a letter to the defendant's counsel. The physician recommended that the defendant should not travel at this time and would need another eight weeks to recuperate. There was no response concerning whether the medical procedure performed on July 23, 1990, was an emergency procedure. The court ordered the defendant's counsel either to produce the treating physician for testimony on this procedure or to bring in a sworn affidavit that the defendant was physically incapable of being in court. The court also allowed the plaintiff to arrange for a physician of his choice to examine the defendant. The court then stated on the record that she felt that the defendant was delaying the resolution of this case. The court warned the defendant's counsel that if the defendant failed to show up on November 9, 1990, the court would grant the dissolution and make all related financial orders effective on that date.

On October 22, 1990, counsel for the defendant notified the plaintiff's counsel that depositions of three witnesses for the defendant were scheduled on October 31, 1990, in New York. On October 25, 1990, the plaintiff's counsel mailed to the clerk's office a motion for protective order to prevent the deposition of these nonparty witnesses. The motion arrived at the clerk's office and was filed on Monday, October 29, 1990. The court noted that because the motions docket was heard on Mondays, there could not have been a hearing until the following Monday at the earliest. The defendant's counsel called the plaintiff's counsel on October 31. The defendant's counsel proceeded with the depositions after the plaintiff's counsel stated that he was not coming to New York. The New York witnesses were the defendant's treating physician and two psychotherapists.

The court refused to admit these depositions as a substitute for live testimony. The court found that it would be prejudicial to the plaintiff to admit these depositions

because the plaintiff was not present to cross-examine the defendant's witnesses. The court reasoned that because of the defendant's scheduling, the plaintiff was prevented from being heard on this motion for a protective order before the depositions took place in New York. The court felt that these depositions should have been scheduled earlier so as to allow the plaintiff to first be heard on his motion for a protective order.

The defendant sought to introduce these depositions in lieu of live testimony pursuant to Practice Book § 248.[1] It is unclear whether these depositions satisfied Practice Book § 248 (1) (b) or (1) (d). The plaintiff argues that there was no evidence that these physicians

---

[1] Practice Book § 248 provides in pertinent part: "——USE OF DEPOSITIONS IN COURT PROCEEDINGS

"(1) Use of Depositions.

"At the trial of a civil action, probate proceeding or administrative appeal, or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were there present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions . . . .

"(b) The deposition of any physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist licensed under the provisions of the General Statutes may be received in evidence in lieu of the appearance of such witness at the trial or hearing whether or not the person is available to testify in person at the trial or hearing. . . .

"(d) The deposition of a witness other than a person falling within the scope of (b) hereof, whether or not a party, may be used by any party for any purpose if the court finds: 1. that the witness is dead; 2. that the witness is at a greater distance than thirty miles from the place of trial or hearing, or is out of the state and will not return before the termination of the trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition; 3. that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; 4. that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; 5. that the parties have agreed that the desposition may be so used; 6. upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

were "licensed under the provisions of the General Statutes" as required by Practice Book § 248 (1) (b). We resolve this claim without having to conclude whether this condition was satisfied in this case. These depositions could be used by the defendant at trial as long as the plaintiff was present or represented during the deposition or if he received "reasonable notice" of these depositions. Practice Book § 248. In this case, because the plaintiff was not present or represented, at issue is whether he received reasonable notice.

We begin by noting that both the plaintiff and the defendant failed to address whether a party can seek a protective order to prevent the deposition of a nonparty witness. Practice Book § 221[2] provides that "[u]pon motion by a party from whom discovery is sought, and for good cause shown, the court may make an order which justice requires to protect a party." This language indicates that a protective order functions only to protect a party from being deposed. *Lougee* v. *Grinnell,* 216 Conn. 483, 487 n.3, 582 A.2d 456 (1990). In *Lougee,* however, our Supreme Court reviewed a nonparty's attempt to obtain a protective order from being deposed in Connecticut for a case arising out of

---

[2] Practice Book § 221. "[SCOPE OF DISCOVERY]—PROTECTIVE ORDER

"Upon motion by a party from whom discovery is sought, and for good cause shown, the court may make an order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

Texas. The court apparently followed rule 26 (c) of the Federal Rules of Civil Procedure, which provides for protective orders for parties and nonparties. Id.

The basis for the protective order in this case was to protect the plaintiff from the "undue burden" of having to attend a deposition in New York, which is a valid reason under Practice Book § 221. Although the discovery being sought by the defendant was not from the plaintiff, the protective order was necessary to protect a party's interest. Accordingly, the plaintiff properly filed a motion for a protective order, to prevent the defendant from conducting depositions of nonparty witnesses.

The factual circumstances of this case justify the court's ruling that the admissibility of these depositions would have been prejudicial to the plaintiff who was not given a reasonable opportunity to have his motion for a protective order heard by the court. The term "reasonable notice" is not defined in the Practice Book. Upon being notified about the New York depositions, the plaintiff's counsel promptly filed a motion for a protective order to prevent the depositions from going forward. This trial was originally scheduled for July 5 and 6, 1990, was delayed several times, and did not end until November 9, 1990. The defendant knew that the physical and mental condition of a party to a dissolution action was an important issue in determining financial awards such as alimony and property distribution. See General Statutes §§ 46b-81 (c) and 46b-82. There were two significant delays in these proceedings during July and September, yet the defendant did not attempt to schedule the depositions during that period. Instead of scheduling the depositions within this time, in order to give the plaintiff an opportunity to challenge the need for these depositions, the defendant waited until the end of October to schedule and notify the plaintiff. The trial was nearing its conclusion when these depo-

sitions were scheduled. The plaintiff should have been allowed to argue his motion for a protective order once he promptly filed it upon learning of the deposition. The plaintiff followed the proper procedure for attempting to stop a deposition and should not be penalized because of the defendant's scheduling of the deposition. Thus, under the facts of this case, the defendant failed to give reasonable notice that would have allowed the plaintiff to argue that he should have been awarded a protective order. The court's refusal to admit these depositions was proper in this case.

## II

The defendant next claims that the trial court's failure to award arrearages owed to the defendant from a New York judgment against the plaintiff was improper. The defendant argues that the full faith and credit clause of the United States constitution was violated by the court's failure to incorporate the arrearages from the New York judgment. We reject the defendant's claim.

The following facts are pertinent to this claim. A New York court ordered the plaintiff to pay $35,000 a year in maintenance to the defendant and $5000 a year in child support. This judgment remained in effect until March 1, 1991, when the trial court issued its orders. At the time of trial, the plaintiff had paid only $1250 toward the defendant's maintenance for that year. The court in its memorandum of decision stated that the "New York order for spousal support was not part of this case except from an historical view to determine the actions of the parties prior to this dissolution of marriage trial. Therefore, the court could not legally take any action with reference to spousal support arrearage and the same is left to the appropriate forum." The defendant never sought a specific award related to the arrearages from the New York judgment. In fact, at

the end of this trial, counsel for the defendant stated: "[W]e are not here asking for anything in regard to the [New York] order except the court to note that they have not been paid . . . ."

The full faith and credit clause does not automatically transform a foreign judgment into a valid judgment in this state. *Krueger* v. *Krueger,* 179 Conn. 488, 491, 427 A.2d 400 (1980). In order for a foreign judgment to constitute a valid judgment, it must be made a judgment in this state. Id. The court was still free to enforce the New York judgment as a matter of comity. Id., 492. The comity doctrine enables our state courts to enforce foreign state judgments as long as the party against whom the judgment is being enforced is given an opportunity "to raise and litigate any questions of modification that could have been raised had enforcement been sought" in the foreign state. *Walzer* v. *Walzer,* 173 Conn. 62, 70, 376 A.2d 414 (1977). Before comity can allow a court to enforce a foreign order of support, a party must attempt to enforce the order in this state. Id.

The defendant failed to seek enforcement of the New York order in this case. The court was free to take the New York order and the outstanding arrearages owed by the plaintiff into account when determining distribution of the parties' assets and financial awards. The court was not required under the full faith and credit clause to order the plaintiff to pay the outstanding arrearages owed to the defendant.

## III

The defendant next claims that the court's financial awards were inadequate in light of the length of the marriage, the defendant's health and her ability to support herself.

A trial court has broad discretion when making financial awards in a marital dissolution action. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990); *Emanuelson* v. *Emanuelson,* 26 Conn. App. 527, 530, 602 A.2d 609 (1992). When reviewing financial awards by a trial court, our only function is to determine whether the court correctly applied the law and whether its conclusions were reasonable. *Rostain* v. *Rostain,* supra. "In deciding whether the trial court could reasonably conclude as it did on the basis of the evidence before it, every reasonable presumption should be indulged in favor of the correctness of its action." Id.

The court noted that it took all the relevant statutory criteria into account when fashioning its financial awards. The defendant argues that because she is unemployed and receives public assistance from the state of New York in the amount of $75 per week, she was entitled to a more significant award of alimony. The court found that the defendant was receiving outside support on the basis of the evidence that the $1000 per month mortgage was paid and that in 1989 the defendant had the swimming pool and patio repaired at a cost of $10,000. The defendant paid for these repairs while claiming to receive only $96.15 per week in child support and $75 per week in public assistance. The court was free to reject the defendant's testimony that her only sources of income were the child support and public assistance because it did not find her testimony credible. *Emanuelson* v. *Emanuelson,* supra, 532. After reviewing all of the evidence, we conclude that the court's financial awards were reasonable. Thus, we will not disturb them.

IV

The defendant claims for the first time on appeal that the judge's conduct evidenced bias against her and that,

because of this bias, the judge should have, sua sponte, disqualified herself. Because the defendant did not properly preserve this claim by bringing a motion for disqualification, she seeks review of this claim under the plain error standard of Practice Book § 4185.

According to Canon 3 (C) (1)[3] of the Code of Judicial Conduct, if a judge's ability to be impartial might reasonably be questioned, the judge should be disqualified from that judicial proceeding. The judge as a minister of justice "should be cautious and circumspect in his [or her] language and conduct." *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 502, 101 A.2d 500 (1953). There does not have to be proof of actual bias by a judge to require disqualification. See *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 441 A.2d 49 (1981); *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 615, 236 A.2d 466 (1967) " 'The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality.' " *Barca* v. *Barca,* 15 Conn. App. 604, 607, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988).

The defendant never sought to disqualify the judge through a motion for mistrial or disqualification during the trial proceedings. The defendant never raised this issue in her motion to open the judgment. Claims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived. *Barca* v. *Barca,* supra, 607. A party's failure to raise a claim of disqualification at trial has been characterized "as the functional equivalent" of

---

[3] Canon 3 (C) of the Code of Judicial Conduct provides in pertinent part: "C. Disqualification. (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

consenting to the judge's presence at trial. *Timm* v. *Timm*, 195 Conn. 202, 205, 487 A.2d 191 (1985). A motion for disqualification or mistrial is required in order to prevent parties from being allowed " 'to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.' " Id.

The defendant seeks to avoid her failure to raise this claim by relying on *Cameron* v. *Cameron,* 187 Conn. 163, 444 A.2d 915 (1982). The defendant asserts that the judge's actions demonstrated a preconceived bias against her, therefore, the judge should have automatically disqualified herself from hearing the case. The judge in *Cameron* v. *Cameron,* supra, accused a party of attempting to commit a fraud on the court and lying during a deposition. Id., 165–66. The judge also questioned the conduct of the party's attorney. Id., 165. Our Supreme Court concluded that the judge's "expressions of a preconceived view of the credibility of a witness who had not yet testified before the trier and of an attitude of skepticism concerning any person represented by his counsel" constituted plain error. Id., 170.

The defendant lists the following examples to justify her claim of judicial bias against the defendant. On the last day of trial, a physician testifying for the defendant mentioned that he had not been paid for his prior appearance in court. The judge stated: "Were you aware that she cleaned out [the plaintiff]? Got every cent that he had and that it was placed in the hands of a receiver so that she can continue to receive funds." The defendant argues that this remark indicated bias by the court and that the court excused the plaintiff's failure to satisfy the New York maintenance order. The court, however, in its memorandum of decision noted that it did not approve of the plaintiff's failure to pay the New York order of spousal support. The court fur-

ther stated that the defendant's conduct did not excuse the plaintiff from satisfying the New York judgment. This illustrates that, although the judge's remark that the defendant "cleaned out" the plaintiff was not appropriate, it did not indicate a preconceived bias against the defendant.

The defendant next points to the judge's responses to her absences from trial because of her alleged medical difficulties. As mentioned previously, the defendant failed to appear in court on August 3 and September 14, 1990, because of her medical condition. On September 14, the defendant's counsel presented a letter to the court explaining the defendant's medical condition. The photocopy of the letter was not addressed directly to the court. The physician's opinion was that the defendant should not travel at that time and would need an additional eight weeks to recover. The judge became agitated by this letter which also failed to explain the defendant's previous medical procedure which occurred on July 23, 1990, causing the defendant to miss court on July 24, 1990. The court had asked the defendant's counsel to supply proof that the medical procedure performed on July 23 was an emergency procedure and not one scheduled by the defendant. The defendant did not provide any proof of this. Even though the court was upset by the defendant's absences, the judge still rescheduled the case, following a delay of the requested eight weeks until November 9, so the defendant could be present. At the beginning of trial on July 6, the court also allowed the defendant to testify out of order after she appeared late in court because of her health problems. This demonstrates that the judge attempted to accommodate the defendant. It was not until later, after the defendant failed to appear on several occasions, that the court became agitated. The judge's agitation was evidenced by remarks such that the defendant was "playing

games" with the court and that "the more trouble she gives a court in Connecticut, it is not going to help her divorce in any way, shape or form."

The judge was clearly agitated by the defendant's conduct in this case. '[A] judge is a human being, not the type of unfeeling robot some would expect the judge to be. Such a passing display of exasperation, though worsened by its repetition, falls far short of a reasonable cause for disqualification for bias or prejudice under Canon 3 (C) of the Code of Judicial Conduct." *Keppel* v. *BaRoss Builders, Inc.*, 7 Conn. App. 435, 444, 509 A.2d 51 (1986). These statements do not illustrate that the judge reached a conclusion that the defendant had no medical difficulties before hearing any evidence on the matter. The judge stated in the memorandum of decision that the defendant did "suffer from some medical problems." The judge questioned the defendant's claimed extent of medical difficulties, finding that the evidence indicated that the defendant was able to work. This finding shows that the judge did not form a preconceived judgment that the defendant's claim of medical difficulties was untrue.

The remaining example that warrants review concerns the judge's comments about the defendant's notifying New York authorities that the plaintiff committed bigamy when he was married in May of 1986.[4] The judge warned the defendant's counsel: "So, the

---

[4] The judge stated: "I should like to put it on the record that [the defendant] has been trying to maneuver all the courts. She has tried to have the district attorney's office in New York bring criminal proceedings against [the plaintiff] as a bigamist when she knew the accidental marriage which had taken place when [the plaintiff] legitimately thought he was divorced and was in Hawaii and was not aware that the judge, on his own motion, had reopened and vacated the divorce. He had remarried, so he came in appropriately in this court and obtained an annulment and after that annulment [the defendant] continued to proceed to try to get criminal actions brought by the district attorney's office, who has communicated with this

games stop. Either they stop or they will—she will find herself in trouble with those very same authorities if the courts up here were to communicate with them directly and say she's lying." The judge in this case also presided over the plaintiff's annulment of his second marriage. Thus, the judge was familiar with the circumstances surrounding the plaintiff's first attempt to obtain a dissolution in Connecticut that was ultimately stayed and finally withdrawn.

The judge's statements about the defendant's attempt to have bigamy charges brought against the plaintiff did reflect an opinion on the defendant's veracity as in *Cameron* v. *Cameron,* supra. The court's statements, however, did not amount to a preconceived view on the defendant's credibility. The defendant had already testified once before the judge made her remarks. In *Cameron,* the trial court questioned the party's veracity before any evidence was presented by the party. Our conclusion that these remarks did not indicate that the judge formed a bias against the defendant is supported by counsel for the defendant's statement concerning the judge's treatment of his client. During this exchange concerning whether the defendant's attempt to have bigamy charges brought against the plaintiff was done in good faith, the defendant's counsel stated that "if I may say, I would absolutely agree that you have treated [the defendant] in the most civil manner."

---

courthouse, to be brought against [the plaintiff]. As well as she's done the same thing in Hawaii, and we've received communications from Hawaii that he should be brought in for a criminal action for bigamy.

"All right. Now, if she has such energy that she can get around and do all those things which she knows is untrue, and she's been represented by counsel all the way through. She had New York lawyers calling up here, and she had New York lawyers filling out her forms, and she had New York lawyers filing her forms . . . . This woman has been represented all the way through so [she is] not a woman who is unintelligent, misdirected and unaware."

The judge's remarks on the bigamy matter did not constitute "a serious departure from [the] high standards" of judicial conduct. Id., 169. Although the judge's comments were "less than circumspect, we cannot find that the judgment was based on something other than the facts presented at trial." *Trapp* v. *Trapp,* 6 Conn. App. 143, 145, 503 A.2d 1187 (1986). On the basis of our review of the trial transcript and record, we conclude that the defendant has failed to establish that the judge's conduct evidenced a preconceived bias against her that deprived the defendant of a fair trial. This was not a case where the judge should have sua sponte disqualified herself from hearing and deciding this action.

The judgment is affirmed.

In this opinion the other judges concurred.