******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MARIANNA PONNS COHEN *v.* BENJAMIN H. COHEN
## (SC 20605)

McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dissolving her marriage to the defendant. During the course of pretrial proceedings, the plaintiff failed to comply with certain of the trial court's standing trial management orders. As a result of numerous motions for continuances, discovery disputes and the plaintiff's failure to comply with the orders, the trial court held several hearings and status conferences during which the plaintiff repeatedly would attempt to speak to the court directly instead of through counsel. In response, the trial court would advise the plaintiff to speak through counsel and granted continuances to allow her to confer with counsel. Throughout trial, the plaintiff continued to fail to comply with trial management orders and failed to submit her more than 500 exhibits to the court in an organized fashion, in violation of the court's pretrial orders concerning the submission of exhibits. Ultimately, the trial court awarded the plaintiff approximately 50 percent of the marital assets but ordered the plaintiff to pay certain of the defendant's legal fees and imposed sanctions on her for her failure to comply with the court's orders regarding the submission of exhibits. On appeal, the plaintiff claimed that the trial court's judgment should be reversed because the court improperly had prejudged her credibility and displayed judicial bias. In support of her claim, the plaintiff referred to two sets of comments that the court had made during the course of the proceedings. Because neither the plaintiff nor her counsel objected to those comments, she sought to prevail on her unpreserved claim under the plain error doctrine. The first set of comments occurred during a telephonic conference when the court was in recess. During that conference, while the plaintiff and her counsel were on hold, the court could be heard on an audio recording saying "I just am not [going to] have that stupid woman talk," and saying to the court clerk during another recess that "[a]t least she'll pay for an expedited report," and that that was "because of [the plaintiff]," and that the plaintiff "was [going to] be a mess until we get it done." The second set of comments occurred during the course of trial, when the trial court stated "[j]ust know it's a complete waste of time" and asked "[a]re you having a good time yet?" On appeal from the trial court's judgment, *held* that the plain error doctrine did not require reversal of the trial court's judgment, as the court's comments did not constitute obvious error resulting in manifest injustice: although the court's comments were intemperate, no reasonable person would question the trial judge's impartiality, as the comments were isolated remarks made on brief occasions, after years of litigation, during a twenty-eight day trial that took place over the course of one year, and, when the comments were viewed in context, they merely showed a momentarily and understandably exasperated jurist attempting to advance a lengthy and contentious proceeding; moreover, the comments did not reflect an opinion derived from an extrajudicial source, the court awarded the plaintiff approximately 50 percent of the marital assets, and the court repeatedly accommodated the plaintiff and patiently sought to unravel the morass of discovery and procedural issues that occurred during the litigation without declaring a mistrial; furthermore, there was no merit to the plaintiff's claim that the trial court's award of attorney's fees and sanctions for her failure to comply with the trial management orders resulted in a denial of her due process rights to notice and an opportunity to be heard, as the trial court repeatedly gave the plaintiff notice and an opportunity to be heard regarding her failure to comply with the court's orders and gave her multiple opportunities to comply even though she failed to do so.

Argued October 13, 2021—officially released March 8, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Regional Family Trial Docket at Middletown, where the case was tried to the court, *Hon. Barbara M. Quinn*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed. *Affirmed.*

*James P. Sexton*, with whom were *Emily Graner Sexton* and, on the brief, *Julia K. Conlin* and *Meryl R. Gersz*, for the appellant (plaintiff).

*Sarah E. Murray*, with whom were *Eric J. Broder*, *Christopher J. DeMattie* and, on the brief, *Robert Dean Vossler*, for the appellee (defendant).

*Opinion*

MULLINS, J. This appeal arises from a lengthy divorce proceeding in which the marriage of the plaintiff, Marianna Ponns Cohen, and the defendant, Benjamin H. Cohen, was dissolved. On appeal, the plaintiff asserts that the judgment of the trial court should be reversed because that court (1) prejudged the plaintiff's credibility and displayed judicial bias, and (2) improperly awarded the defendant $65,000 in legal fees and $5000 in sanctions.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On February 3, 2014, the plaintiff filed this dissolution action. The case proceeded to trial in November, 2015. The trial court, *Tindill, J.*, heard evidence over the course of four days. Then, in August, 2016, the trial court declared a mistrial.

Thereafter, the case was transferred to the regional family trial docket. In October, 2016, the trial court ordered the parties to comply with the Superior Court for Family Matters standing trial management orders by November 7, 2016, because trial was scheduled to begin in November, 2016. The defendant complied with the trial management orders but the plaintiff did not. In the months that followed, the trial court, *Hon. Barbara M. Quinn*, J., judge trial referee, granted numerous motions for continuances filed by the plaintiff because of issues related to her health and that of her family. During this time, two different attorneys entered appearances on behalf of the plaintiff and then subsequently withdrew. At some points during the pretrial proceedings, the plaintiff, who is herself an attorney, proceeded as a self-represented party. Approximately two months before trial was set to begin in July, 2017, another attorney entered an appearance on behalf of the plaintiff, and the trial court again granted a continuance to accommodate the scheduling needs of the plaintiff's new attorney. During this pretrial period, the defendant filed numerous motions for sanctions based on the plaintiff's failure to comply with the trial management orders, which required the parties to share and produce their proposed exhibits in a timely and organized fashion. Instead of issuing sanctions at that point in time, the trial court gave the plaintiff more time to comply with the trial management orders, but the plaintiff failed to comply.

As a result of the numerous motions for continuances, discovery disputes and the plaintiff's failure to comply with the court's trial management orders, the trial court held numerous hearings and status conferences. During many of these hearings and conferences, the plaintiff repeatedly attempted to speak to the court herself, despite being represented by counsel. In response, the trial court repeatedly advised the plaintiff to speak through her counsel and recessed the hearings and con-

ferences on multiple occasions to give the plaintiff an opportunity to confer with counsel.

Trial took place over twenty-eight days from August, 2017, through August, 2018. Prior to trial, the court notified the parties that, "if either side is going to introduce more than 100 exhibits, [the court wanted] those exhibits scanned and available to the court on a thumb drive or a [compact disc] . . . ." The plaintiff indicated that she would be able to provide her exhibits in an electronic format, stating that "[i]t seems like a sensible thing to do." Nevertheless, throughout the course of the trial, the plaintiff continued to fail to comply with the trial management orders, and the trial court held additional hearings and conferences, attempting to resolve issues surrounding the plaintiff's exhibits.

During the course of the trial, the plaintiff introduced more than 500 documents as full exhibits and had more than 260 additional documents marked for identification. Even after the close of evidence, the plaintiff's failure to provide the exhibits in an organized fashion continued, and the court spent considerable time reconciling exhibits and giving the parties an opportunity to do the same. Ultimately, the trial court issued a memorandum of decision, in which it awarded the plaintiff approximately 50 percent of the total marital assets of $47.5 million.[2] In addition, the court ordered the plaintiff to pay the defendant $65,000 in legal fees and $5000 in sanctions for her failure to comply with orders concerning exhibits. This appeal followed.[3]

For the first time on appeal, the plaintiff asserts that the judgment of the trial court should be reversed for plain error because the court improperly prejudged the credibility of the plaintiff and displayed judicial bias. Specifically, the plaintiff points to two sets of comments in which, the plaintiff alleges, the trial court displayed judicial bias. The first set of comments occurred on July 17, 2017, during a telephonic conference, when the court was in recess. The plaintiff claims that these comments indicated that the trial court had predetermined that she was deceitful prior to her testifying at trial. The second set of comments occurred during trial. The plaintiff never raised any objection to either set of comments before the trial court and therefore asks us to reverse the judgment on the basis of plain error. See Practice Book § 60-5.

"The plain error doctrine, which is codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly

preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless [s]he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101, 25 A.3d 594 (2011). In the present case, the plaintiff cannot prevail under the plain error doctrine.

At the outset, it is important to note that the claim of judicial bias is a serious matter, which we do not take lightly. We do not, however, review such allegations in a vacuum, divorced from the context in which the events took place. In order to understand that context, it is important to understand the following background. During the course of the pretrial period, the plaintiff had at least three different attorneys. In addition, the plaintiff, who is an attorney, also entered an appearance as a self-represented party. The trial court allowed the plaintiff to argue on her own behalf when she was in between attorneys and did not have counsel for a particular hearing or conference. This was not a case of hybrid representation, however. Once represented by counsel, the trial court repeatedly reminded the plaintiff, during multiple hearings and conferences, that she could not interrupt the proceedings and must speak through her counsel. Despite the court's repeated reminders about not interrupting and speaking through her counsel, the plaintiff continued to interrupt the proceedings.

On July 17, 2017, the trial court held a telephonic status conference. The plaintiff and her attorney both dialed in to the conference from different locations. Therefore, if the plaintiff tried to add anything to the discussion, it resulted in an interruption of the proceedings. After multiple interruptions and admonishments, the trial court agreed to take a recess to allow the plaintiff to confer with her attorney on a separate line. The trial court then announced: "We'll take a recess . . . [a]nd we'll call you back. Bye." The plaintiff suggested that she and her attorney could just put the court on hold, and the trial court agreed. The defendant's attorney then acknowledged that he was still there and would put his phone "on mute, so we can't hear each other." The audio recording of the conference apparently was not stopped or paused during the recess.

As a result, one can hear the trial court whispering during the recess. The plaintiff points to one of the statements made during this recess in support of her plain error claim—namely, the trial court said, "I just am not gonna have that stupid woman talk." Thereafter, the plaintiff's attorney returned to the call and said "[h]ello." The defendant's attorney also said "[h]ello." The trial court then said, "[w]e are returning on to the record then." The conference then continued for more than one hour.

The plaintiff then interrupted again, and the court offered another recess. At that point, the trial court clearly said, "[t]ake a recess." The plaintiff points to statements made during this recess that can be heard on the audio recording. First, while conversing with the court clerk, off the record, regarding the plaintiff's late disclosure of an expert witness, the trial court commented that, "[a]t least she'll pay for an expedited [report]." One can then hear laughter, and the trial court said, "I know, it's horrible." A few seconds later, the trial court said: "It's because of Marianna . . . . She's not sick." The trial court also said, "[s]he's gonna be a mess until we get it done." After the plaintiff finished consulting with her attorney, the plaintiff's attorney and the defendant's attorney returned to the call, and the trial court clearly stated: "We're back on the record in the matter of Ponns Cohen."

A review of the audio recording reveals that these comments were made by the trial court in frustration during recesses from a telephonic conference, in which the plaintiff repeatedly interrupted the proceedings and ignored the trial court's repeated instructions that she must speak through her counsel. The trial court granted multiple recesses in order to accommodate the plaintiff and to allow the plaintiff to confer with her attorney, but the interruptions continued. Significantly, there is no indication that the trial court's annoyance with the plaintiff's ongoing misbehavior had any effect on the court's rulings; to the contrary, at the end of this conference, the trial court allowed the plaintiff to disclose her expert, despite her failure to comply with the trial management orders regarding the expert disclosure. Furthermore, a review of the entire record demonstrates that the trial court treated the plaintiff fairly and with consideration throughout the lengthy proceedings. Indeed, the trial court granted many of the plaintiff's numerous requests for continuances, over the objections of the defendant's attorney. In doing so, the trial court acknowledged and sympathized with the plaintiff's health issues and family emergencies. Therefore, although the trial court's comments were ill-advised, we cannot conclude that they "constitute[d] an error that was so obvious that it affect[ed] the fairness and integrity of and public confidence in the judicial proceedings," and an error "of such monumental propor-

tion that [it] threaten[ed] to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Silva*, 339 Conn. 598, 620–21, 262 A.3d 113 (2021).[4]

With respect to the second set of comments that occurred during the course of the trial itself, in open court, it is undisputed that the plaintiff's attorney did not object to any of these comments during trial.[5] Therefore, the plaintiff again relies on the doctrine of plain error.

Having reviewed these comments, we conclude that they do not constitute obvious error, resulting in manifest injustice. Indeed, "[t]he controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." (Internal quotation marks omitted.) *Barca* v. *Barca*, 15 Conn. App. 604, 607, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). We recognize that judges are held to the highest of standards, but we must also recognize that judges are human. To be sure, "[i]f the judge did not form judgments of the actors in those [courthouse] dramas called trials, [the judge] could never render decisions." (Internal quotation marks omitted.) *Liteky* v. *United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

In the present case, although we agree with the plaintiff that the comments were intemperate, we cannot conclude that a reasonable person would question the judge's impartiality. The comments were isolated remarks made on brief occasions, after years of litigation, during a twenty-eight day trial that took place over the course of one year. These particular comments, on their face, do not evince a judge that is not impartial and, when viewed in context, show a momentarily, and understandably, exasperated jurist attempting to move along a lengthy and contentious proceeding. As the United States Supreme Court has explained: "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration . . . remain immune." (Citations omitted; emphasis omitted.) Id., 555–56.

In light of the isolated nature of the comments, the fact that they did not reflect an opinion derived from an extrajudicial source, and the trial court's ultimate award to the plaintiff of approximately 50 percent of the marital assets—hardly an outcome bespeaking bias on the part of the decision maker—we cannot conclude that there was an obvious error that resulted in manifest injustice. These isolated comments would not lead a reasonable person to question the judge's impartiality in this case. Instead, a review of the record reveals that, despite these comments, the trial court repeatedly accommodated the plaintiff and patiently sought to unravel the morass of discovery and procedural issues that occurred during this litigation, without declaring a second mistrial. Accordingly, we cannot conclude that the doctrine of plain error requires reversal in the present case.

The plaintiff also challenges the trial court's award of $65,000 in attorney's fees and $5000 in sanctions for the plaintiff's failure to comply with trial management orders. On appeal, the plaintiff asserts that the trial court denied the plaintiff her due process rights to notice and an opportunity to be heard regarding her failure to comply with trial management orders. Specifically, the plaintiff asserts that the trial court improperly awarded the defendant attorney's fees and sanctions based, at least in part, on the fact that the plaintiff provided the court with a USB drive on which the court could not locate any exhibits in August, 2018, without holding a hearing. We disagree.

After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we conclude that the plaintiff's claim regarding the attorney's fees and sanctions for failure to comply with trial management orders has no merit. A review of the voluminous record in the present case, particularly the trial court's repeated hearings, conferences and orders regarding the management of the exhibits in this case, demonstrates that, over the course of approximately two years, the trial court repeatedly gave the plaintiff notice and an opportunity to be heard regarding her failure to comply with the trial management orders and gave her multiple opportunities to comply, but she repeatedly failed to do so. Accordingly, we cannot conclude that the plaintiff was deprived of due process.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff also makes two other claims in the appeal. First, the plaintiff asserts that the judgment of the trial court must be reversed because the court denied the plaintiff's request to mark the USB drives submitted by the plaintiff for identification, and that, without these exhibits, the record is not adequate for review on appeal. Second, the plaintiff asserts that the trial court's findings of fact that the plaintiff caused the failure or corruption of the files on the USB drive and that the plaintiff spent $3 million on attorney's fees were clearly erroneous. We have considered these claims and find them to be without merit.

<sup>2</sup> The plaintiff was ordered to pay $959,080.25 to the defendant for amounts owed and for assets that could not be divided equally.

<sup>3</sup> The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

<sup>4</sup> Although we assume, without deciding, that these comments are on the record and reviewable for purposes of this appeal, we note that our review of the audio recording demonstrates that these comments were made after the trial court clearly stated that the court was in recess and the parties acknowledged that recess. The comments were inadvertently recorded only because the trial court tried to oblige the plaintiff's request that the court put her and her attorney on hold while they conferred.

<sup>5</sup> The plaintiff points to the following comments: "Just know it's a complete waste of time," and "[a]re you having a good time yet?"

---