Tyler *v.* Todd.

JULIUS TYLER AND ANOTHER *vs.* ALFRED TODD.

In a suit against the defendant as endorser of a promissory note, the question being whether the endorsement was genuine or forged, and the defendant claiming that his name had been forged to a large number of notes of the same maker and that this was one of them, the plaintiffs introduced a witness who testified that he received the note from the maker and sold it to one *E,* from whom it appeared that the plaintiffs received it. Held that on cross-examination he might be inquired of as to having purchased other notes with the defendant's name endorsed thereon, such evidence tending to show that the witness might be mistaken in relation to the particular note by confounding it with some of the others.

The defendant testified in his own behalf that he had received forty-eight notices of protest as endorser of notes of the same maker from banks within a few months and stated the amounts of the notes. Held that this evidence was admissible in connection with his previous testimony that he had endorsed but one of the notes protested, as tending to prove that there was a large number of forgeries, a fact material to be shown in order to establish an alleged confederacy between the maker of the notes and certain other parties.

Questions of this character, involving a great variety of transactions with the accompanying circumstances, often require the testimony to take a wide range.

Where it does not appear clearly on what ground testimony objected to was admitted and it was admissible for any purpose, the court cannot regard it as having been admitted for an improper purpose.

Where an objectionable question was asked and was permitted on objection by an auditor, but the witness in his answer stated only a fact that was admissible in evidence, it was held that the impropriety of the question was not a sufficient reason for setting aside the auditor's report.

Where the same question was repeated and the witness answered it in a manner that was in itself inadmissible, but the counsel at once disclaimed it as evidence, it was held that the impropriety of the question and answer was not a sufficient reason for setting aside the auditor's report.

Where a witness was introduced as an expert in judging of the genuineness of signatures, it was held to be proper for the party calling him to inquire of him as to his residence, his occupation, and the length of time he had been engaged in business that would qualify him to judge of signatures, and also as to his actual experience in such matters as a witness in court.

Upon the question whether a signature is genuine or forged it is the practice in this state to allow the disputed signature to be compared in court with others that are genuine.

But for this purpose they must not only be genuine, but must be admitted or proved to be such before they can be used, and a signature of which the genuineness is not thus established cannot be used even in a cross-examination of a witness to test his accuracy as to another signature.

An expert ought not to be permitted to give an opinion as to the genuineness of a signature upon a comparison of signatures not before the court.

Where an expert testified as to his opinion from a comparison of signatures made

Tyler *v.* Todd.

out of court, it was held that the opposing party had a right to object to the evidence, but, not taking that objection, had no right to require the production of the signatures so examined.

The defendant had testified that he had endorsed but nine notes signed by *P*, and that there were forty-seven notes made by *P* upon which his name had been forged as an endorser. To contradict the defendant evidence was offered by the plaintiffs that six notes of *P* had been shown to the defendant, purporting to be endorsed by him, and that he had not repudiated them. Held that this evidence was not admissible, unless it were shown that these notes were a part of the forty-seven which he disputed and not a part of the nine which he admitted.

A witness cannot be enquired of on cross-examination as to irrelevant matters for the mere purpose of contradicting him.

Assumpsit against the defendant as an endorser of a promissory note ; brought to the Superior Court in New Haven county and referred to an auditor. The plea was the general issue, with notice that the defendant denied the genuineness of the endorsement of his name upon the note. The auditor found the issue for the defendant and the plaintiffs remonstrated against the acceptance of the report. The Superior Court found the facts upon the remonstrance and reserved the questions arising thereon for the advice of this court. The case is sufficiently stated in the opinion.

*Doolittle*, with whom was *C. Ives*, for the plaintiffs.

*Baldwin*, for the defendant.

CARPENTER, J.    The question before the auditor was, whether the name of Alfred Todd on the back of the note in suit was a genuine or false signature. It was claimed that his name had been forged to a large number of notes, amounting in the aggregate to a large sum, and that this was one of the forged notes. The auditor found the issue for the defendant, and the plaintiffs remonstrate against the acceptance of the report. The questions raised on the remonstrance will be considered in their order.

1.    Francis Warner, a witness introduced by the plaintiffs, testified in chief that he received the note in suit from Richard Platt, the maker, that he sold it to Eneas Warner, from

whom it was found that the plaintiffs received it, and that it was signed by R. Platt. All the questions put in the cross-examination, which are objected to, relate to the purchase of other notes from the same maker, many of which had the name of the defendant indorsed thereon. We do not see why that was not a legitimate cross-examination. It might tend to show that the witness was mistaken in relation to the matter testified to by him in chief, by showing that he had confounded this note with some one of the many other notes. If so the auditor was clearly right in receiving the evidence.

2. The defendant was asked how many notices of protests of R. Platt's notes from banks he had received in the last few months. He replied, " forty-eight;" and stated the amounts of the notes, &c. This testimony, by itself, was not important ; but, in connection with the fact previously sworn to, that he had signed but one of the notes protested, tended to prove, if the witness was believed, that there were a large number of forgeries outstanding, a fact material to be shown in order to establish the alleged confederacy between Platt, Warner and Smith. And we think also that it was relevant to the main issue. Questions of this character, involving as they do a great variety of transactions with the accompanying circumstances, often require the testimony to take a wide range. This was evidently one of those cases, and the testimony was properly admitted.

3. The case does not state clearly on what ground the testimony relating to the Goodsell note was received, or for what purpose it was used. The defendant now claims that Platt was a reluctant witness, that he had reason to suppose that he would testify to the combination, as he had previously, as it is claimed, testified in effect to the same thing in an affidavit, and that the questions put were designed and adapted to elicit such testimony. If that was all there was to it, we think it was within the discretionary power of the court to permit the questions to be put. If the testimony was limited to that the plaintiffs have no cause of complaint. Inasmuch as it does not appear for what purpose it was received and used, and we can see that for one purpose it might have been

Tyler *v.* Todd.

legitimately received, although for other purposes it might be inadmissible, we can not say, as matter of law, that it was received for an illegitimate purpose.

4. The question put by the defendant to the same witness, " Do you know of anything which causes you to believe that Henry F. Smith wrote the name of Alfred Todd on any note or notes signed by you during the summer or fall of 1868 ?" was objectionable, in form and substance, and should not have been permitted. But the fact sworn to in response, that there were more notes out than he could account for, was admissible. The answer being proper and admissible we do not think the impropriety of the question a sufficient reason for setting aside the report. The second answer, in response to a repetition of the question, was clearly inadmissible, and would have been a sufficient reason for setting aside the report, had not the defendant's counsel, in the time of it, disclaimed it as evidence. If the case had been on trial to a jury, it might be questionable whether the evidence would not have some effect notwithstanding the disclaimer, but with a court accustomed to try causes and to distinguish between the legitimate and illegitimate effect of evidence, we can not believe that any injustice was done.

5. The principal matter sworn to by William Hull was material to the issue and not objected to by the plaintiffs. The fact that was objected to was introductory merely, and only important as being a part of the transaction. As such it was clearly admissible.

6. We see no objection to the testimony of Paine. He was introduced as an expert. As a preliminary fact it was necessary to show that he was one. For that purpose it was proper to inquire of him as to his residence, his occupation, and the length of time he had been engaged in business that would qualify him to judge of handwriting. We also think it was proper to show that he had had actual experience in such matters as a witness.

Moreover it tended to show the estimation in which he was held by those who knew him best, and was admissible upon the same principle that we sometimes allow a party in the first

instance to show that a stranger witness sustains a good character for truth and veracity at home. *Merriam* v. *Hartford & N. Haven R. R. Co.*, 20 Conn., 354 ; *Rogers* v. *Moore*, 10 Conn., 13.

7.   The rule prevailing in England, and some of the states, excludes a comparison of handwriting in cases of this character.   But in this state we allow the disputed signature to be compared with signatures admitted or proved to be genuine.   The triers may compare and judge for themselves, and experts may, upon comparison, give their opinions.   But the signature used as a standard of comparison must not only be genuine, but must be admitted or proved to be such before it can be used.   No case has come to our knowledge in which the signature written by another party, or a disputed signature, has been used for any such purpose.   While we do not question the propriety of the rule adopted in this state, we are not disposed to extend it so as to embrace false or disputed signatures.   This limitation of the rule is necessary in order to avoid confusion and collateral issues.   And we think the same rule with the same limitation should apply to cases where the object is, as in this case, to test the accuracy of an expert.   The same evils result from the introduction of such testimony, whether introduced for one purpose or the other. The law in Massachusetts in respect to a comparison of handwriting is similar to our own.   The Supreme Court of that state, in *Bacon* v. *Williams*, 13 Gray, 525, held that a disputed signature could not be used in cross-examination of a witness to test his accuracy as to another signature.

We think therefore that the auditor did right in refusing to allow the signature written by the plaintiffs' counsel to be used in the cross-examination of the witness.

8.   The question relating to the testimony of Mr. Bristol seems to be this.   He at first testified in behalf of the plaintiffs that he believed the signature to be genuine.   Subsequently, at the instance of the defendant, he testified that he had again examined the signature and was of the impression that it was counterfeit.   On a cross-examination by the

plaintiffs it appeared that the change in his opinion was in part the result of a comparison with other signatures, not before the court, some of which were said to be genuine and others not. The plaintiffs then insisted that those signatures should be produced ; but the auditor over-ruled this claim. We agree with the plaintiffs' counsel that an expert should not be · permitted to give an opinion formed upon a comparison with signatures not before the court. Hence if the testimony had been objected to when the fact appeared, it would have been the duty of the court to exclude it, unless under the circumstances it was admissible as affecting his previous testimony. But if admissible at all for any purpose, its force as an opinion must have been materially weakened, if not entirely destroyed, by the matter elicited by the cross-examination. The plaintiffs took no exception to the testimony, but the presumption is that they had the benefit of having it weighed in connection with the facts. In one or the other of these ways the plaintiffs had their remedy ; but we do not think they had a right to demand the production of the signatures, and thus cumber the case with a multiplicity of collateral issues. But if we are wrong in this, there is another view of the question which is conclusive against the plaintiffs. The question calls for the genuine and false signatures alike. If upon any principle they were entitled to the former, they clearly were not entitled to the latter. If a party group together admissible and inadmissible testimony, and insists upon the admission of the whole, the court is not bound to make the distinction, but may reject the whole together.

9. Before the testimony, offered by the plaintiffs, that six notes were shown the defendant in the month of August, 1868, and not repudiated by him, as referred to in the 9th reason of the remonstrance, could have any effect by way of contradicting the defendant, who had testified that he had indorsed but nine notes, signed by R. Platt, after the preceding April, it was necessary to show that said notes were not a part of the nine, but were in fact a part of the forty-eight, claimed to be forgeries. As that did not appear, and the

testimony offered was unaccompanied with any offer to make such proof, we think the auditor did right in excluding it.

10. The plaintiffs, in the cross-examination of Joseph R. Platt, elicited matters which had no relation to the matters testified to by the witness in chief.

To lay the foundation for contradicting him, the question stated in the remonstrance was put to him, but the auditor excluded the question, and rejected the evidence. It is not pretended that the note, referred to in the question, had any relation to the note in suit. It was irrelevant matter, and the rule is too well settled to require argument, that a witness can not be inquired of respecting such matters, for the mere purpose of contradicting him.

On the whole, we advise the Superior Court to accept the auditor's report, and render judgment thereon for the defendant.

In this opinion the other judges concurrèd, except HINMAN, C. J., who did not sit.