STATE OF CONNECTICUT *v.* DANIEL JONES
(3602)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 4—decision released July 22, 1986

*R. William Bohonnon,* with whom, on the brief, were *David M. Bohonnon* and *K. Wynne Bohonnon,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, was *John J. Kelly,* chief state's attorney, for the appellee (state).

SPALLONE, J. After a trial to a jury, the defendant was convicted of two counts of kidnapping in the first degree, a violation of General Statutes § 53a-92 (a) (2) (A), and two counts of sexual assault in the first degree, a violation of General Statutes § 53a-70 (a). From the judgment rendered following the verdicts, the defendant appeals, claiming that the trial court erred (1) by permitting the state's handwriting expert to testify as an alibi rebuttal witness despite the failure of the state to notify the defendant in advance pursuant to Practice Book § 764, and (2) by allowing the state's handwriting expert to testify from writing samples that were never authenticated.[1]

The evidence adduced at trial could reasonably support the following facts. On Saturday, September 3, 1983, at about 11:45 p.m., the victims, two fourteen

[1] Although the defendant appealed to this court, the appeal was transferred to the Supreme Court pursuant to Practice Book § 2003 because the subject matter of the appeal is within the direct jurisdiction of the Supreme Court. General Statutes §§ 51-199 (b) (3), 53a-92 (b), 53a-35a (3). On review, however, the Supreme Court elected to transfer the matter to this court. General Statutes § 51-199 (c).

year old boys, were walking home from a movie in Milford. The defendant, driving a four door Dodge sedan, pulled his car to the side of the road, exited from the car and identified himself to the victims as a Bridgeport juvenile officer. The defendant ordered the boys to the side of his car, handcuffed them, pushed them in the car, fastened them in with seatbelts, and drove off. While driving, he purported to read the boys their *Miranda* rights and radio into juvenile authorities. The defendant drove into Bridgeport and pulled into a parking lot. At that point, the defendant got out of the car, pulled one of the boys from the back seat, and forced him into the trunk. The defendant pulled a sweater over the other boy's head and drove off.

Approximately one-half hour later, the defendant arrived at a building and parked his car inside. When in the building, the defendant forced the victim from the trunk, pulled a shirt over his head, and handcuffed him to a pole. The defendant removed the shirt from the boy's head and placed masking tape over the boy's eyes. The boy was nevertheless able to peep out and identify certain features of the building. The defendant then removed the other boy from the car, handcuffed him to a different pole, and taped his eyes shut. This boy was also able to see out under the tape.

The defendant then brought the first victim into another room and sat him in a chair. The defendant, who was now nude, sat on a desk and interrogated the victim. He asked the victim his name, address, telephone number, date of birth, nickname, his parents' names and their places of employment, and the name of his school and grade. The victim was able to observe the defendant writing down the information on a piece of paper. The defendant then returned to the other victim and asked the same biographical questions. The victim was able to see out under the tape and observed the defendant write the information onto a pad of yel-

low paper. The defendant then brought the victims into a different room and sexually assaulted them.

After the sexual assault, the defendant replaced the tape blindfolds with bandages and allowed the boys to get dressed. He then drove them back to Milford and let them off, where they were found by the Milford police.

Both claims of error raised by the defendant focus on the testimony of the state's handwriting expert, William Duane. The circumstances surrounding Duane's testimony require some explanation. As part of its case-in-chief, the state introduced a yellow sheet of paper that had been seized from the defendant's desk pursuant to a valid search warrant. The paper contained certain biographical information of the victims. After the victims testified that the color of the paper and the information contained on it were the same as that used and elicited by the defendant on the night of the abduction, the trial court admitted the document. To further corroborate this evidence, the state offered an admission by the defendant that the exhibit was in his handwriting and had been in his bedroom. Upon the defendant's motion to suppress, however, the court ruled these statements inadmissible. This ruling was made on Thursday, August 2, 1984. The following Tuesday, August 7, the state disclosed that it intended to call Duane as a handwriting expert to testify regarding the handwriting on the sheet of paper. At the same time, the state filed a supplemental disclosure with the defendant's counsel listing Duane as a rebuttal witness to the defendant's alibi testimony. The disclosure was made pursuant to Practice Book § 764, which requires the state to disclose the identity of witnesses who will testify in response to the defendant's alibi defense after the defendant has disclosed his alibi witnesses. The defendant moved to exclude Duane from testifying because the state had not disclosed timely his identity

as an alibi rebuttal witness pursuant to Practice Book § 764. The state's attorney responded that the state was unaware of the need for a handwriting expert until the unfavorable ruling on the motion to suppress, and that it had not received Duane's report until that day and had promptly provided defense counsel with a copy. The state's attorney also noted that the disclosure of Duane as a witness was made within ten days of receiving the defendant's written notice of alibi witnesses, and indicated that he would have no objection to a request by defense counsel for a continuance to prepare for cross-examination. The trial court then allowed Duane to testify.

The defendant's first claim reiterates his argument that the state violated Practice Book § 764 by failing to file timely a notice of the state's intent to call Duane as a witness. Section 764 provides: "If the written demand and notice have been filed pursuant to Sec. 763,[2] the prosecuting authority, within ten days after filing of the notice, but in no event less than ten days before the trial unless the judicial authority otherwise directs, shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses."

---

[2] Practice Book § 763 provides: "Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi." The state had previously made a demand pursuant to this section, and the defendant had disclosed to the state the names of alibi witnesses he intended to call in his defense.

The state argues that even though Duane, out of an abundance of caution, was listed as an alibi rebuttal witness in the state's supplemental disclosure, he should not, under § 764, be considered such a witness. The state points out that Duane's testimony was presented as part of its case-in-chief, that Duane himself did not purport to have any knowledge of the defendant's whereabouts, and that Duane's testimony served only to confirm testimony of the victims, who did know where the defendant had been.

We agree that Duane was not an alibi rebuttal witness under Practice Book § 764. Section 764 requires the state to disclose the identity of witnesses who will either "establish the defendant's presence at the scene of the alleged offense [or] . . . rebut testimony of the defendant's alibi witnesses." Duane's testimony fell into neither of these categories. His testimony, if credited, would tend to establish the defendant's *authorship* of the evidence in question. It could not, without more, establish the defendant's presence or absence at the scene of the crime. Duane cannot therefore be classified as an alibi rebuttal witness. Cf. *United States* v. *Givens,* 767 F.2d 574, 584 (9th Cir. 1985), cert. denied, 474 U.S. 953, 106 S. Ct. 321, 88 L. Ed. 2d 304 (1985).

Even if Duane were considered an alibi rebuttal witness, the state in this case did not know of its need to use Duane until the defendant's motion to suppress was granted in the midst of trial. Where a new alibi or alibi rebuttal witness is discovered in the midst of trial, disclosure requirements are governed by Practice Book § 765. Section 765 provides: "If prior to or *during the trial,* a party learns of an additional witness whose identity, if known, should have been included in the information furnished under Secs. 763 or 764, the party shall promptly notify the other party or his counsel of the existence and identity of such additional witness."

(Emphasis added.) There is no question that the state's disclosure of Duane complied with this section.

Finally, although defense counsel claimed he was surprised by the witness and would need more time to find a rebuttal expert, he did not request a continuance. "If the defendant felt that he had insufficient time to prepare, his remedy would have been to request a continuance, which he did not do." *State* v. *Villafane,* 171 Conn. 644, 669, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). The trial court did not abuse its discretion by allowing Duane to testify. See *State* v. *Boucino,* 199 Conn. 207, 216, 506 A.2d 125 (1986).

The defendant's second claim is that the trial court erred by allowing Duane to utilize exemplars of the defendant's handwriting which the defendant alleges were not properly authenticated.[3] The state was allowed to introduce as exhibits several business and employment records bearing the name of the defendant.[4] Duane used these exhibits in determining that the

---

[3] The state claims that review of this claim should be precluded by the failure of the defendant to comply with the procedures set forth in Practice Book § 3060F (d) (3) regarding the form of the appellant's brief. In the interests of justice and in view of the fact that the reply brief of the defendant sets forth an adequate factual summary, however, we will review the claim. Practice Book § 3164; see *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 330, 430 A.2d 1 (1980); *Vaiuso* v. *Vaiuso,* 2 Conn. App. 141, 145, 477 A.2d 678, cert. denied, 194 Conn. 807, 482 A.2d 712 (1984).

[4] The exhibits are: (1) a Cablevision employment application and two W-4 forms; (2) a Pepperidge Farms employment application, a Manpower employee record and three receiving forms; (3) receiving reports and purchase orders from Cablevision; (4) a photographic enlargement with side-by-side comparison of key words from the yellow sheet with the victim's biographical information and a composite of the same letters taken from the business and employment records; and (5) a Manpower job application.

handwriting on the yellow sheet was that of the defendant. The defendant claims that the state failed to prove that these exemplars were in his handwriting.[5]

It is undisputed that where an issue is raised regarding the authenticity of a writing, proof of authenticity may be made by a comparison of the disputed writing with another writing, an exemplar, the authenticity of which has been established. *Shakro* v. *Haddad,* 149 Conn. 160, 163, 177 A.2d 221 (1961); *Tyler* v. *Todd,* 36 Conn. 218, 222 (1869). The authenticity of the exemplar may be proved by circumstantial evidence. McCormick, Evidence (3d Ed.) § 222; annot., 41 A.L.R.2d 575, 589 § 8. The state claims that the authenticity of the signatures on business and employment records was established by their nature and contents, as well as by testimony of the defendant's fiancee on cross-examination that the handwriting on the exemplars was that of the defendant.

We conclude that the trial court did not abuse its discretion by admitting the exemplars into evidence. Courts have generally held that handwriting on employment or business records may serve as exemplars where the employee would normally be expected to place his signature on such documents. See *United States* v. *Mangan,* 575 F.2d 32, 41–42 (2d Cir. 1978) (personnel file); *United States* v. *Greiser,* 502 F.2d 1295, 1298–99 (9th Cir. 1974) (motel registration cards, employment applications); *United States* v. *Reed,* 439 F.2d 1, 3 (2d Cir. 1971) (W-4 tax withholding form); *United States* v. *Swan,* 396 F.2d 883, 885 (2d Cir. 1968),

---

[5] The exhibits were admitted under the business record exception to the hearsay rule. General Statutes § 52-180. Although the business record rule obviates the hearsay objection, it does not render all business records competent for whatever purpose they may be offered. See *State* v. *Waterman,* 7 Conn. App. 326, 341–42, 509 A.2d 518 (1986). Thus, the admission of the document did not, in and of itself, establish the authenticity of the defendant's signatures on the documents.

cert. denied, 393 U.S. 923, 89 S. Ct. 254, 21 L. Ed. 259 (1968) (student's university records); *United States* v. *Liguor,* 373 F.2d 304, 305 (2d Cir. 1967) (employment and lease applications, automobile registration); *Shapiro* v. *Equitable Life Assurance Society,* 76 Cal. App. 2d 75, 87, 172 P.2d 725 (1946) (signature on loan application); *State* v. *Clark,* 552 S.W.2d 256, 264–67 (Mo. App. 1977), aff'd, 592 S.W.2d 709 (Mo. 1979) (employment application, personnel file). Here, the defendant never contended that the exemplars were not genuine, nor did he advance any argument as to who else may have signed the documents. In fact, the defendant's fiancee, on cross-examination at a later point in the trial, confirmed the authenticity of the exemplars. Under these circumstances, there was no error in allowing the exemplars to be introduced into evidence.

There is no error.

In this opinion the other judges concurred.