## ALEXANDER CHURCHILL ET AL. *v.* EUNICE ALLESSIO, EXECUTRIX (ESTATE OF EVA CHURCHELOW), ET AL.
### (AC 16646)

O'Connell, C. J., and Foti and Hennessy, Js.

Argued September 14—officially released November 10, 1998

*Frederic E. Mascolo*, with whom was *Cheryl E. Heffernan*, for the appellants (named plaintiff et al.).

*Gary P. Sklaver*, with whom was *Irving H. Perlmutter*, for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiffs Alexander Churchill, Jr., and John Churchill appeal from the judgment for the defendants, rendered after a jury trial, determining that the document offered by the defendants for probate as the last will and testament of Eva Churchelow was revoked by Churchelow and then revived under the doctrine of dependent relative revocation. The plaintiffs claim that the trial court improperly (1) applied the doctrine of dependent relative revocation throughout its rulings on the evidence and in its charge to the jury, (2) permitted the defendants' handwriting expert to render an opinion before the jury based on unauthenticated, improperly admitted exemplars, (3) precluded the plaintiffs from introducing at trial the prior testimony of Helen Skjerding, a witness from another trial, and (4) deprived the plaintiffs of a fair trial by committing an accumulation

of errors causing prejudice and bias in the jury's deliberations. We affirm the judgment of the trial court.[1]

The following facts are relevant to this appeal. The decedent, Eva Churchelow, died on April 29, 1985. Following her death, a document dated June 27, 1984, and purporting to be Churchelow's last will and testament, was admitted to the Probate Court for administration. After the Probate Court admitted the will, Alexander Churchill, Jr., John Churchill and Marlene Ann Tosun, Churchelow's grandchildren, appealed from that decision to the Superior Court. The case was tried to a jury, which returned a general verdict rejecting the 1984 document as Churchelow's last will and testament.[2] Thereafter, an appeal was filed in this court, and we affirmed the trial court's rejection of the 1984 will. *Churchill* v. *Skjerding*, 31 Conn. App. 247, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993).

Following this court's ruling, the named defendant in the present matter, Eunice Allessio, who is Churchelow's daughter, found a copy of another document purporting to be Churchelow's last will and testament, which was dated May 17, 1967 (1967 will). The original of this document was located and filed in the Probate Court for administration. After the will was admitted, Churchelow's grandchildren appealed from that decision to the Superior Court claiming, inter alia, that the purported signature of Churchelow appearing on the 1967 will was a forgery. The case was tried to a jury, which found that while Churchelow's signature did, in fact, appear on the 1967 will, she had later revoked the will. The jury concluded, however, that the will should

---

[1] Because we affirm the judgment of the trial court, we need not consider the defendants' alternate grounds for affirmance, which they raised by way of cross appeal. See Practice Book §§ 61-8 and 63-4 (a) (1).

[2] We will refer to the document dated June 27, 1984, as the "1984 will," even though we recognize that it was not properly executed as such.

nevertheless be accepted under the doctrine of dependent relative revocation. This appeal followed.[3]

## I

The plaintiffs first claim that the trial court improperly applied the doctrine of dependent relative revocation throughout its rulings on the evidence and in its charge to the jury. We disagree.

## A

"The gist of the doctrine [of dependent relative revocation] is that if a testator cancels or destroys a will with a present intention of making a new one immediately and as a substitute and the new will is not made or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in the absence of evidence overcoming the presumption. 1 Page, Wills (Lifetime Ed. [1941]) p. 885; 1 Schouler, Wills, Executors & Administrators (6th Ed. [1923]) § 632; 57 Am. Jur. 356, § 514; note, 24 A.L.R.2d 514, 554 [1952]. The rule has been more simply stated in these words: '[W]here the intention to revoke is conditional and where the condition is not fulfilled, the revocation is not effective.' *Matter of Macomber*, 274 App. Div. 724, 725, 87 N.Y.S.2d 308 [1949]. . . . [The rule] is applicable in cases of partial as well as total revocation. *Gardner* v. *Gardiner*, 65 N.H. 230, 232, 19 A. 651 [1890]; *Schneider* v. *Harrington*, 320 Mass. 723, 726, 71 N.E.2d 242 [1947]; *In re Roeder's Estate*, 44 N.M. 578, 588, 106 P.2d 847 [1940]; 57 Am. Jur. 358, § 516." (Citations omitted.) *LaCroix* v. *Senecal*, 140 Conn. 311, 315, 99 A.2d 115 (1953).

The plaintiffs claim that the trial court improperly prohibited them from exploring Churchelow's true

[3] While Alexander Churchill, Jr., and John Churchill appealed from the judgment, Marlene Ann Tosun did not and is not a party to this appeal. We refer in this opinion to the Churchills as the plaintiffs.

intent at the time of the revocation of her 1967 will, and subsequent drafting and execution of her 1984 will. This claim is based on the court's refusal to admit into evidence the 1984 will of Churchelow, as well as evidence concerning the circumstances surrounding its making. The plaintiffs claim that these rulings "forced the [plaintiffs] to refrain from making any real inquiry into the mental state and intent of the testator at the time of the act of revocation and the drafting and filing of the 1984 will by examining the surrounding circumstances."

"The trial court has broad discretion in determining the relevancy of evidence. *State* v. *Fritz*, 204 Conn. 156, 167, 527 A.2d 1157 (1987). We afford a trial court's ruling on the admissibility of evidence great deference. *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). Its evidentiary rulings will be set aside only where there has been a clear abuse of discretion. *State* v. *Holliman*, 214 Conn. 38, 50, 570 A.2d 680 (1990). Every reasonable presumption should be given in favor of the trial court's ruling. *State* v. *Shindell*, 195 Conn. 128, 136, 486 A.2d 637 (1985)." *State* v. *Reddick*, 36 Conn. App. 774, 789, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995). "Moreover, evidentiary rulings will be overturned on appeal only where there . . . [is] a showing . . . of substantial prejudice or injustice." (Internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 247 Conn. 24, 37, 718 A.2d 425 (1998).

Here, in ruling that the 1984 will, as well as testimony concerning the circumstances surrounding its drafting, was irrelevant and thus inadmissible, the trial court cited our opinion in *Churchill* v. *Skjerding*, supra, 31 Conn. App. 253, in which we upheld the jury's general verdict that Churchelow's 1984 will was not properly executed in accordance with General Statutes § 45a-

251.[4] In reference to the 1984 will, the trial court noted that "there cannot be any intention whatsoever on the part of [Churchelow] because either it was not her signature, she did not have the capacity to make the will or she had no intent because she operated under duress."

Here, we cannot say that the trial court's refusal to admit the 1984 will, as well as testimony concerning the circumstances surrounding its failed execution, was a clear abuse of discretion. It is axiomatic that "[e]vidence is admissible only if it is relevant." *Tomlinson* v. *Board of Education*, 226 Conn. 704, 728, 629 A.2d 333 (1993). Given the prior determination that the 1984 will was not executed in accordance with § 45a-251 and, thus, was not Churchelow's last will and testament, we cannot say that to preclude its introduction as irrelevant was improper.

Furthermore, an examination of the record reveals that testimony was elicited from Patrick Zailckas, the attorney scrivener of the 1984 will, concerning the circumstances surrounding the revocation of the 1967 will. For example, during cross-examination by the plaintiffs' attorney, the following colloquy took place:

"[Plaintiffs' Counsel:] Okay. And is it your testimony that you used [the 1967] will as a guide?

"[Zailckas:] Yes, sir.

"Q. And did you go over this will with her?

"A. Yes, sir.

"Q. And I show you page one on the third clause, did you cross out five acres—five—the term five acres to ten acres?

---

[4] General Statutes § 45a-251 provides in relevant part: "A will or codicil shall not be valid to pass any property unless it is in writing, *subscribed by the testator* and attested by two witnesses, each of them subscribing in the testator's presence . . . ." (Emphasis added.)

"A. Yes, sir.

"Q. And did Mrs. Churchelow object when you wrote on this will?

"A. She told me to do that.

"Q. She told you to do that?

"A. Yes, sir.

"Q. She told you to cross it out? Right?

"A. She gave me that because she was going to make a new will out. I was using that as a guide. . . .

"Q. She told you that she wanted to revoke this will, she wanted to change it?

"A. . . . [S]he wanted to change it, not revoke it, change it.

"Q. Well, she wanted a new will?

"A. She wanted a new will.

"Q. She wanted to get rid of this will?

"A. I don't remember her mind. All I know is she wanted changes made, and that's what I was doing."

Therefore, it appears that the plaintiffs were not unduly limited in exploring the true intent of Eva Churchelow at the time of the revocation of the 1967 will. Given the limited evidentiary value of the 1984 will, as well as the evidence elicited concerning the revocation of the 1967 will, the plaintiffs cannot demonstrate that they suffered substantial prejudice by the trial court's ruling.

## B

The plaintiffs next claim that the trial court's charge on the doctrine of dependent relative revocation was improper and misled the jury as to the application of that doctrine. We disagree.

"In reviewing the [plaintiffs'] claim, we adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 507, 481 A.2d 750 (1984). . . . We do not critically dissect the charge in order to discover possible inaccurate statements. *Amato* v. *Desenti*, 117 Conn. 612, 617, 169 A. 611 (1933). Rather, we see if [the jury instructions] gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 566, 562 A.2d 1100 (1989). As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury; *Kelley* v. *Bonney*, 221 Conn. 549, 584, 606 A.2d 693 (1992); we will not view the instructions as improper. Even if instructions are found to be improper, we must further determine whether they have been prejudicial to the claiming party by adversely affecting the trial's outcome. Id., 586; *Blancato* v. *Randino*, 30 Conn. App. 810, 816, 622 A.2d 1032 (1993)." (Citations omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett*, 229 Conn. 256, 280–81, 640 A.2d 74 (1994).

In support of their claim that the trial court's charge on the doctrine of dependent relative revocation was improper, the plaintiffs first claim that "[t]he court did not charge the jury that the defendants-proponents had to establish by clear intent that Eva Churchelow desired and wished to revive her 1967 will." Under the doctrine of dependent relative revocation, however, the proponents of a will do not bear such a burden. According to the doctrine, "if a testator cancels or destroys a

will with a present intention of making a new one immediately and as a substitute and the new will is not made or, if made, fails of effect for any reason, *it will be presumed that the testator preferred the old will to intestacy,* and the old one will be admitted to probate in the absence of evidence overcoming the presumption." (Emphasis added.) *LaCroix* v. *Senecal,* supra, 140 Conn. 315. The revival of the old will is the result of the legal presumption that a testator would prefer an old, previously revoked will to intestacy. An actual intention to revive an earlier will need not be shown nor proven.

Additionally, the plaintiffs claim that in its charge, the trial court improperly placed on the plaintiffs the burden of proof on the issue of dependent relative revocation. In reviewing this claim, we are mindful that "the test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Holbrook* v. *Casazza,* 204 Conn. 336, 351–52, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). An examination of the jury charge, as a whole, demonstrates that the burden was placed properly on the defendants, the proponents of the will.[5]

---

[5] The jury charge read in relevant part: "If, however, you find that Eva Churchelow did revoke her otherwise valid 1967 will, your inquiry does not end. An intent to revoke may be either *absolute and final or depend on the existence or belief in the existence of certain circumstances.* Accordingly, you must continue your deliberations to determine if despite that revocation the 1967 will nevertheless should be accepted and remain in full force and effect. This brings into play the legal doctrine known as dependent relative revocation.

"Under the doctrine of dependent relative revocation, if a testator revokes his will intending to make a new will and a new will is not made or if it fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy and the old will would be admitted to probate in the absence of evidence overcoming this presumption. The doctrine is a rule of presumed intention which will prevail in the absence of sufficient

## II

The plaintiffs next claim that the trial court improperly permitted the defendants' handwriting expert to render an opinion before the jury based on comparisons with unauthenticated, improperly admitted exemplars. We disagree.

At issue in this case was whether Churchelow's signature actually appeared on the 1967 will. In an attempt to prove that Churchelow had, in fact, signed the 1967 will, the defendants retained a document examiner,

rebuttal evidence. This rule can only apply when there is a clear intent of the testator that the revocation of the old will is made conditional upon the validity of the new will. The doctrine of dependent relative revocation is designed to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will became inoperative.

"The relevant evidence in this case indicates that Eva Churchelow met with Attorney Zailckas in 1984, when she was ninety-three years of age, in connection with the making of her new will; that new will, the purported 1984 will is a nullity. The revocation of a valid will may be so intimately connected with the making of a new will as to show a clear intent of a testator, here Eva Churchelow, that the revocation of the old will is made conditional upon the validity of the new will so that the revocation fails to become operative if a new will is a nullity.

"*The proponents of the 1967 will have the burden of proof by the fair preponderance of the evidence on this issue of dependent relative revocation.* Their burden, however, will be satisfied by the presumption of validity that I have just described, the opponents [have] the burden of producing evidence sufficient to rebut this presumption. In order to rebut the presumption in this case, the opponents must have produced sufficient credible evidence showing a reason or reasons why the revocation of the 1967 will was absolute and final and not intended by Eva Churchelow to be dependent on the making of a valid new will.

"If you find that the opponents have done so and thereby have rebutted the presumption, *the burden shifts back to and remains on the proponents who must then satisfy the burden of proof without the benefit of the presumption. If you find that the proponents have satisfied the burden of proof on this issue of dependent relative revocation, whether by reason of the presumption of validity or without it, your verdict must enter in favor of the proponents.* Otherwise, your verdict must enter in favor of the opponents for the revocation that you have previously found proved will have been absolute and final." (Emphasis added.)

John Sang, to authenticate the signature appearing on the 1967 will as Churchelow's true signature. The plaintiffs claim that the handwriting exemplars relied on by Sang in his comparisons were, themselves, not properly authenticated and, therefore, could not have provided the basis for those comparisons.

"It is undisputed that where an issue is raised regarding the authenticity of a writing, proof of authenticity may be made by a comparison of the disputed writing with another writing, an exemplar, the authenticity of which has been established. *Shakro* v. *Haddad*, 149 Conn. 160, 163, 177 A.2d 221 (1961); *Tyler* v. *Todd*, 36 Conn. 218, 222 (1869). The authenticity of the exemplar may be proved by circumstantial evidence. McCormick, Evidence (3d Ed.) § 222; annot., 41 A.L.R.2d 575, 589 § 8." *State* v. *Jones*, 8 Conn. App. 177, 184, 512 A.2d 932 (1986). "In general, a writing may be authenticated by a number of methods, including direct testimony, circumstantial evidence or proof of custody. [2 C. McCormick, Evidence (4th Ed. 1992)] §§ 219 through 228, pp. 38-58." *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 604, 717 A.2d 713 (1998).

Here, the defendants introduced circumstantial evidence from which it could have been established that the exemplars utilized by Sang to authenticate the signature appearing on the 1967 will were, themselves, authentic. For example, testimony was elicited that showed that the documents on which the exemplars appeared were found in a cardboard box under the foot of Churchelow's bed. The defendant, Allessio, who is Churchelow's daughter, testified that the signatures appearing on these documents looked "like my mother's signature." Additionally, although Allessio had not actually witnessed Churchelow sign her name on the documents, she had seen her mother sign her name on other occasions. In fact, she had helped teach Churchelow to write and to sign her name. Finally, the exemplar

signatures appeared on documents such as cards and letters. Allessio testified that while Churchelow could understand and speak English, she could not read or write English and would often practice signing her name on such items.

While the plaintiffs claim that this evidence was insufficient to authenticate these signatures properly, the trial court nevertheless found them to be proper exemplars suitable for comparison. As stated above, "[t]he authenticity of the exemplar may be proved by circumstantial evidence." *State* v. *Jones*, supra, 8 Conn. App. 184. Here, we cannot say that the trial court abused its discretion in finding that the exemplars utilized by Sang were authentic.[6]

### III

The plaintiffs next claim that the trial court improperly precluded the plaintiffs from introducing at trial the prior testimony of Skjerding, an unavailable witness who had testified at the 1984 will trial. We disagree.

Pursuant to General Statutes § 52-160, "[i]f any witness in a civil action is beyond the reach of the process of the courts of this state, or cannot be found, and his testimony has been taken by the court stenographer or

---

[6] We similarly reject the plaintiffs' argument that the exemplars of Churchelow's signature constituted inadmissible hearsay. "A statement made [out of court] that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible. *State* v. *Packard*, 184 Conn. 258, 274, 439 A.2d 983 (1981)." (Internal quotation marks omitted.) *State* v. *Hoth*, 50 Conn. App. 77, 88, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). Additionally, however, "an out-of-court statement that is not offered to prove the truth of the matter asserted therein is not hearsay. *State* v. *Alvarez*, 216 Conn. 301, 310–11, 579 A.2d 515 (1990)." *State* v. *Jones*, 44 Conn. App. 476, 485, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997). Here, the signatures were not out-of-court assertions being offered for their truth. Instead, the signature exemplars in this case were introduced so that their physical characteristics could be compared with the signature on the 1967 will. They do not, therefore, constitute hearsay.

reporter *upon a former trial of the action,* a transcript of the record of the testimony, verified by the oath of the stenographer or court reporter, shall be admissible in evidence, in the discretion of the court, *upon any subsequent trial of the action,* in the same manner and to the same extent as a deposition of the witness would be if legally taken." (Emphasis added.) Here, it is clear that Skjerding's testimony was taken during the trial of a different cause of action, the 1984 will trial, and, therefore, does not fall under the purview of § 52-160.

## IV

The plaintiffs finally claim that the trial court committed an accumulation of errors that caused prejudice and bias in the jury's deliberations.[7] We are unpersuaded.

## A

The plaintiffs initially assert that the trial court improperly prevented them from introducing into evidence the value of the property at issue in this case on the grounds of relevance. In general, "evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Hines,* 243 Conn. 796, 801, 709 A.2d 522 (1998). The dispositive issue in this case was whether Churchelow had revoked, and then revived, her 1967 will. We cannot say that the trial court abused its discretion by refusing to allow the introduc-

---

[7] At the outset, we note that the plaintiffs assert that in addition to the particular claims of error enumerated in their brief, there were "numerous rulings not mentioned but represented in the trial transcript" that caused prejudice and bias in the jury's deliberations. These additional claims of error were not briefed. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Fromer* v. *Freedom of Information Commission,* 36 Conn. App. 155, 156, 649 A.2d 540 (1994); see also Practice Book § 67-4, formerly § 4064C. Therefore, we will not review those claims.

tion of the value of Churchelow's property, which was the subject of the 1967 will.

## B

The plaintiffs' next assertion centers on their failed attempt to introduce into evidence the deposition testimony of Zailckas for the purpose of impeaching him by prior inconsistent statements. Following an objection to the introduction of this testimony by opposing counsel, the trial court ruled that it had not "heard any inconsistent statements" and sustained the objection. The defendants assert that this comment, along with the trial court's refusal to give a curative instruction, "invaded the province of the jury."

"It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made . . . in other proceedings which contradict those made upon direct examination. . . . *Falls* v. *Loew's Theatres, Inc.*, 46 Conn. App. 610, 612, 700 A.2d 76 (1997)." (Internal quotation marks omitted.) *State* v. *McKnight*, 47 Conn. App. 664, 670, 706 A.2d 1003 (1998). "The trial court must determine, however, whether the statement or conduct is, in fact, sufficiently contrary to the position asserted at trial to justify its introduction as a prior inconsistent statement. *State* v. *Piskorski*, 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979)." *State* v. *Otto*, 50 Conn. App. 1, 8, 717 A.2d 775, cert. denied, 247 Conn. 927, 719 A.2d 1171 (1998). Here, it was well within the trial court's discretion to determine that the proffered testimony was not sufficiently contrary to Zailckas' in-court testimony so as to render it admissible.

## C

The plaintiffs' final assertion concerns a comment made by the trial court to one of the plaintiffs' attorneys.

While one of the plaintiffs' attorneys was questioning the plaintiffs' handwriting expert, the trial court apparently thought that the plaintiffs' cocounsel was also addressing the witness. The following short colloquy took place:

"The Court: I would appreciate it, counsel, if you did not talk to the witness while she was on the stand.

"[Plaintiffs' Cocounsel]: Excuse me, Your Honor?

"The Court: I said I would appreciate it if you do not talk to the witness while she was on the stand.

"[Plaintiffs' Cocounsel]: I didn't, Your Honor.

"The Court: It looked like you did. If you didn't do it, fine."

The plaintiffs claim that the purpose of the trial court's statements was to "prejudice the jury against that counsel and her clients." The plaintiffs claim that this ruling, along with others by the trial court, "appear[ed] to demonstrate a bias on his part favoring one side and being against the other." "Claims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived. *Barca* v. *Barca*, [15 Conn. App. 604, 607, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988)]. A party's failure to raise a claim of disqualification at trial has been characterized 'as the functional equivalent' of consenting to the judge's presence at trial. *Timm* v. *Timm*, 195 Conn. 202, 205, 487 A.2d 191 (1985)." *Cahn* v. *Cahn*, 26 Conn. App. 720, 732–33, 603 A.2d 759 (1992), aff'd, 225 Conn. 666, 626 A.2d 296 (1993). Here, since the defendants failed to raise the claim of judicial bias at trial, we will not review the merits of that claim.

The judgment is affirmed.

In this opinion the other judges concurred.